IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROCHELLE E. LANGLEY, et al.          *

        Plaintiffs          *

        vs.                    *CIVIL ACTION NO. MJG-02-1506

                        *

UNITED PARCEL SERVICE INC.,
et al.                             *
        Defendants
*       *       *       *       *       *       *       *       *

## MEMORANDUM AND ORDER

The Court has before it Defendant United Parcel Service's Motion for Summary Judgment, Defendant Robert E. Mitchell's Motion for Summary Judgment, and the materials submitted by the parties in relation thereto.  The Court finds a hearing unnecessary.

I.    BACKGROUND[1]

At all times here relevant, Plaintiff Rochelle Langley ("Ms. Langley")was employed by Defendant UPS ("UPS") in the Industrial Engineering Department ("IED"), under the supervision of Defendant Robert Mitchell ("Mitchell").  Ms. Langley began working at the IED in 1999.  In February 2001 Ms. Langley was promoted to Package Planner, working at UPS's

---

[1]    In the instant context, the facts must be taken in the light most favorable to the Plaintiff.

Burtonsville, Maryland location and sporadically at its Alexandria, Virginia facility.

The incidents that form the basis for Ms. Langley's claims commenced in February 2001, coincident with her promotion.  According to Ms. Langley, On January 17, 2001, Mitchell stated to her "Shorty, give me some and I'll look out for you," to which Ms. Langley responded "whatever."  Langley Dep. at 151.  Also, according to Ms. Langley, beginning on February 6, 2001 and continuing until March 12, 2001, Mitchell touched her on the buttocks on five separate occasions.  One of the alleged touchings occurred at Mitchell's home, of which Ms. Langley had requested a tour.  She said nothing to him, nor he to her, until the last of these occasions, on March 12, 2001.  On that date, Ms. Langley told Mitchell to stop touching her.  He replied that he would do so.  He never touched her again after that point.

On April 25, 2001, Ms. Langley reported Mitchell's behavior for the first time to a friend in UPS's Human Resources Department.  She did so after having notified the Equal Employment Opportunity Commission ("EEOC") that she was being harassed at work and having been told by the EEOC, in her words, to "get the employer involved."  Id. at 211-212. Ms. Langley informed her friend that she was being harassed by

2

her supervisor.  The manager who would ordinarily handle such matters was on vacation, so the friend advised Ms. Langley to meet with Gary Fernandez ("Fernandez") in the Human Resources department.  Ms. Langley told Fernandez that she was being sexually harassed by her manager but did not give Fernandez Mitchell's name or any details of the harassment.  Fernandez recommended that she return to Mitchell and tell him to stop, and that if he didn't stop, she should return to Human Resources.  Id. at 215.

On May 1 2001, Ms. Langley met with Gina Haseloop ("Haseloop"), the District Employee Relations Manager.  Ms. Langley described the touching incidents and the comment Mitchell had made to her.  Id. at 226.  Haseloop asked Ms. Langley if she had taken notes of the events and Ms. Langley answered that she had but did not have them with her.  Ms. Haseloop asked her to bring copies of the notes to Human Resources.

Ms. Langley expressed that she feared losing her job and that she was willing to relocate to the Alexandria, Virginia UPS location.  Ms. Langley then expressed a desire to return to work and left the meeting.  Ms. Langley did not ask at that meeting to be separated from Mitchell.  Id. at 240.  She also

stated that she did not want Mitchell or anyone else to be aware that she had reported his behavior.  <u>Id.</u> at 243.

After the meeting with Haseloop, Ms. Langley was allowed to go work in another building in Alexandria, Virginia, where she did not have to have contact with Mitchell.  <u>Id.</u> at 243. She was at that facility full-time with the exception of two approximately three-hour visits to the Burtonsville, Maryland facility each week.  <u>Id.</u> at 56.  At the Alexandria facility, Ms. Langley was assigned responsibility for a project to increase the efficiency of the system there for cleaning and gassing vehicles.  She testified that she suffered "anxiety" and stress with regard to the progress of the project and that she had been told that she was behind schedule with her work. <u>Id.</u> at 37-39, 42.

Ms. Langley never met formally again with Haseloop or any other members of the Human Resources Department nor did she provide her notes of the incidents to Haseloop until July of 2001.  <u>Id.</u> at 254-58.  She left voicemail messages for Haseloop on May 2, 2001, and on one other occasion but did not go to the human resources department because, she said, she feared running into Mitchell.  <u>Id.</u> at 258.

On May 2, 2001, the day after Ms. Langley had met with Haseloop, Haseloop interviewed Mitchell.  <u>Id.</u> at 245-46.

4

Mitchell denied all allegations of harassment.  Haseloop Aff.
at ¶8.   Haseloop also interviewed two co-workers of Ms.
Langley who also reported to Mitchell.  Id.  Both employees
indicated that Mitchell had never acted inappropriately
towards them nor had they seen him act inappropriately towards
any other employee.   Id.  On that same day Ms. Langley spoke
with Haseloop, who assured her she was not going to lose her
job.  On May 11, 2001, Haseloop repeated this reassurance to
Ms. Langley when the two met in a parking lot.  Id. at 254.

On May 22, 2001, Ms. Langley left a voicemail for
Haseloop informing her that she would not be returning to
work.  Id. at 255-256.  She in fact did not return to work
after that date.  On multiple occasions after she stopped
coming to work, UPS sent letters to Ms. Langley asking her to
come in for a meeting to discuss her absence from work and the
allegations she had made.  In those letters UPS repeatedly
invited Ms. Langley to return to work in a position in which
she would not have any contact with Mitchell.  Haseloop Aff.,
at Ex. 5-12.  Mr. Mitchell was terminated by UPS in July 2001.
UPS informed Ms. Langley of his departure, again inviting her
to return to work.  Id. at Ex. 9.  She did not return.

In or about June 2001, Ms. Langley filed a Charge of
Discrimination with the EEOC, asserting a claim of sexual

5

harassment against UPS and Mitchell.  On January 30, 2002, the
EEOC closed the file, determining that it was unable to
conclude that there had been a violation.  On April 26, 2002,
Ms. Langley and her husband, Plaintiff Todd Langley ("Mr.
Langley") filed suit in this court, asserting violations of
Title VII of the Civil Rights Act of 1964, as amended, 42
U.S.C. 2000(e) et seq. by UPS and Mitchell, assault and
battery against Mitchell, and loss of consortium against both
defendants.


II.  LEGAL STANDARD

     In deciding a summary judgment motion, the Court must
look beyond the pleadings and determine whether there is a
genuine need for trial.  See Matsushita Elec. Indus. Co., Ltd.
v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The Court
must determine whether the evidence presents a sufficient
disagreement to require submission to a jury or whether the
evidence is so one-sided that one party must prevail as a
matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 251-53 (1986).  If the defendant carries its burden by
showing an absence of evidence to support a claim, the
plaintiff must demonstrate that there is a genuine issue of
material fact for trial.  See Celotex Corp. v. Catrett, 477

U.S. 317, 324-25 (1986).  The Court must look at the evidence
presented in regard to the motion for summary judgment through
the non-movant's rose colored glasses but must view it
realistically.  Nevertheless, the non-movant is entitled to have
all reasonable inferences drawn in his favor.  Adickes v. S.H. Kress
& Co., 398 U.S. 144, 158-59 (1970).

An issue of fact must be both genuine and material in
order to forestall summary judgment.  An issue of fact is
genuine if the evidence is such that a reasonable jury could
return a verdict in favor of the plaintiff.  See Anderson, 477
U.S. at 248.  An issue of fact is material only if the
establishment of that fact might affect the outcome of the
lawsuit under governing substantive law.  See id.  "If the
evidence is merely colorable, or is not significantly
probative, summary judgment may be granted."  Id. at 249-50
(internal citations omitted).


III. DISCUSSION

    A.   Title VII Claims

        1.   Title VII Claim Against UPS

Ms. Langley brings a claim for sexual harassment against
her employer, UPS.  She does not allege any hostile employment
action by UPS.  Rather, her claim is based on her allegation

7

that Mitchell's actions created a "hostile work environment" that constitutes a violation of Title VII.

To establish a prima facie case of hostile work environment Plaintiff must establish: (1) that she was harassed "because of" her "sex"; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer. Smith v. First Union National Bank, 202 F.3d 234, 241 (4th Cir. 2000).

It appears that Plaintiff can establish the first and second elements of the test.  The harassment was because of her sex and she has stated that it was unwelcome.  However, the question remains as to whether she can satisfy the third and fourth elements.

The third element of the prima facie claim has two prongs. The harassment must be sufficiently severe and pervasive enough to support a subjective and objective finding that the working environment was abusive.  "Title VII does not provide a remedy for every instance of verbal or physical harassment in the workplace." Lissau v. Southern Food Srvc., Inc., 159 F.3d 177, 183 (4th Cir. 1998).  "For sexual harassment to be actionable, it must be sufficiently severe or

8

pervasive to 'alter the conditions of [the Plaintiff's]

employment and create an abusive working environment."

Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986).

The Court will proceed under the assumption that Plaintiff

subjectively perceived her workplace to be hostile.  The question

thus becomes whether or not the workplace was objectively hostile.

The Supreme Court has stated:

> [W]hether an environment is "hostile" or
> "abusive" can be determined only by looking
> at all the circumstances. These may include
> the frequency of the discriminatory
> conduct; its severity; whether it is
> physically threatening or humiliating, or a
> mere offensive utterance; and whether it
> unreasonably interferes with an employee's
> work performance.

Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

UPS argues that the incidents described by Plaintiff,

while "inappropriate or offensive, did not rise to the level

of severity or pervasiveness to be actionable under Title

VII." UPS's Motion for Summ. J. at 21.  It argues that the

five incidents of Mitchell's touching Plaintiff's buttocks,

coupled with his one sexual comment to her, do not rise to the

level of creating an objectively hostile work environment as a

matter of law.  Defendants point to a number of Fourth Circuit

cases in which far more pervasive and severe conduct was deemed

insufficient to render a work environment "hostile." See, e.g. Hosey

9

v. McDonald's Corp., 1996 WL 414057 *1-3 (D. Md. 1996), aff'd 113
F.3d 1232 (4th Cir. 1997) (repeated incidents of touching the "seat"
of an employee, sexual remarks, and repeated requests for a date
insufficient as a matter of law to create a hostile work
environment), see also Raley v. Board of St. Mary's County Comm'rs,
752 F.Supp. 1272, 1279 (D.Md. 1990).  Further, Ms. Langley, by
her own admission, failed to inform Mitchell that his touching
and comment were offensive to her until nearly a month after
the incidents had commenced.  Langley Dep. at 188-89.  Once
she had so informed him, the touching and comments ceased
completely.  Id. at 149.

     The Court finds that taking all of Ms. Langley's statements as
true, the incidents described do not amount to harassment severe or
pervasive enough to render the working environment objectively
hostile.  The Court will note, however, that had the conduct
continued after March 12, 2001, when Ms. Langley told Mitchell to
cease touching her, the result might be different.

      Moreover, even assuming arguendo that Ms. Langley could
establish that her work environment was objectively as well as
subjectively hostile, she cannot establish that there is any basis
for UPS' vicarious liability.  Thus she is unable to satisfy the
fourth element of the prima facie case for a hostile work
environment.

                                 10

An employer is not strictly liable for the harassment of an employee by a supervisor, though it may be vicariously liable in certain circumstances.  Liability will not be imputed to the employer if 1) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and if 2) the employer can show that "the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise."  <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 808 (1998), <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 764 (1998).

The evidence establishes that UPS exercised reasonable care to correct and prevent the harassment.  It had substantial preventative measures in place, including a well-publicized and posted policy against sexual harassment, required training for employees, and a complaint procedure for employees who believed they had been harassed.  Ms. Langley admitted that the policy was well-publicized and that she was personally familiar with and had received training regarding the policy.  Langley Dep. at 264.

The Fourth Circuit has stated that "evidence that [the employer] had disseminated an effective anti-harassment policy provides compelling proof of its efforts to prevent workplace harassment."  <u>Lissau v. Southern Food Srvc., Inc.</u>, 159 F.3d 177, 182 (4th Cir. 1998), <u>see also</u> <u>Barrett v. Applied Radiant</u>

11

<u>Energy Corp.</u>, 250 F.3d 262, 266 (4th Cir. 2001) (same).  The
Court finds that the uncontroverted evidence shows the
existence of such a policy and reasonable efforts to publicize
and educate employees on the policy.

Further, on learning of Ms. Langley's allegations, UPS
took immediate action to remedy the problem.  UPS immediately
removed Ms. Langley to a different location where she could
perform her job but be removed from Mitchell's presence.  UPS
also commenced an investigation into the allegations,
including conducting interviews with Mitchell and other
employees.  UPS continued its investigation - and eventually
terminated Mitchell's employment - despite the fact that Ms.
Langley did not cooperate with the investigation by providing
her notes of the events or by responding to UPS's requests
that she come in for further discussion of the case.  It is
undisputed that no further incidents of harassment occurred
after UPS was notified and commenced its investigation.

The Court thus finds that UPS has satisfied the first
prong of the Faragher/ Ellerth test.

The second element of the test requires that the
defendant employer show that "the plaintiff employee unreasonably
failed to take advantage of any preventative or corrective
opportunities provided by the employer or to avoid harm otherwise."

12

Faragher, 524 U.S. at 808.  Failure to utilize an employer's complaint procedure to report incidents of sexual harassment "will normally suffice to satisfy [the employer's] burden under the second element of the [Faragher/ Ellerth] test."  Barrett, 240 F.3d at 267.

Ms. Langley contends that her failure to report the harassment was reasonable because she feared retaliation or losing her job if she reported the harassment.  However, the Fourth Circuit has stated unequivocally that a "generalized fear of retaliation does not excuse a failure to report sexual harassment."  Id. (ruling in upholding a judgment notwithstanding the verdict that plaintiff's failure to report was unreasonable as a matter of law where the only reason given was a fear of retaliation).

In light of the fact that Ms. Langley neither took any action on her own to inform Mitchell that his actions were unwelcome nor did she take advantage of UPS's complaint procedure, with which she stated that she was familiar, the Court finds that UPS has satisfied the second prong of the Faragher/ Ellerth test.  There is thus no basis on which to impute liability to UPS for Mitchell's actions.

Because Ms. Langley cannot satisfy two of the four elements of a Title VII claim for discrimination due to a

13

hostile work environment, UPS is entitled to summary judgment on Ms. Langley's Title VII claim.

### 2.    Title VII Claim against Mitchell

It is well-established that Title VII applies only to sexual harassment claims against "employers" as defined in the statute, and not to supervisors.  <u>Lissau</u>, 159 F.3d 177, 180 (4th Cir. 1998).  There is no dispute that Mitchell was not an "employer" but rather, an employee of UPS in a supervisory position.

Mitchell is thus entitled to summary judgment on Ms. Langley's Title VII claim.

### B.    Tort Claims

Ms. Langley asserts a state-law tort claim for assault and battery against Mitchell, and her husband, Plaintiff Todd Langley ("Mr. Langley") asserts state law claims for loss of consortium against Mitchell and against UPS.

### 1.    Loss of Consortium Claim Against UPS

Mr. Langley asserts a claim against UPS for loss of consortium.  A claim for loss of consortium is not an independent cause of action.  Instead, it is a derivative

14

claim that provides a remedy for injury to a marital relationship only when that injury is caused by an underlying tort for which liability has been established.

Mr. Langley's loss of consortium claim is derivative of UPS' liability in the underlying Title VII cause of action. The Court has granted summary judgment to UPS on the issue of its liability under Title VII. Thus, there is no underlying basis for Mr. Langley's claim and summary judgment shall be granted for UPS.[2]

2.   <u>Loss of Consortium, Assault, and Battey Claims against Defendant Mitchell</u>

Plaintiffs assert state law tort claims for assault and battery and for loss of consortium against Defendant Mitchell, based on his alleged touchings of Ms. Langley. Those claims, when brought, were pendent to Plaintiffs' federal Title VII

---

[2]    UPS argues that even if the Court had not granted summary judgment on its liability for the Title VII violation, Mr. Langley cannot, as a matter of law, bring a loss of consortium claim based on a Title VII violation. In <u>Brown v. Youth Srvc. Int'l of Baltimore, Inc.</u>, 904 F.Supp. 469, 470 (D. Md. 1995), the court held that because Maryland courts had not recognized "the proposition that a loss of consortium claim may be appended to a federal employment discrimination claim," there was no authority for the court to create or recognize such a novel claim. <u>Id.</u> This Court agrees and, had it not granted summary judgment on the aforestated basis, would grant it on this basis.

claim.  There is no independent source of federal jurisdiction over the remaining state-law tort claims.

As the only federal claim in this case has been dismissed in its entirety, the Court no longer has subject matter jurisdiction over Plaintiff's remaining state law claims. Pursuant to 28 U.S.C. §1367, the Court may decline to exercise supplemental jurisdiction over pendant state law claims where the federal cause of action has been dismissed.  <u>See</u> 28 U.S.C. §1367(c)(3).  Here, there is no federal law aspect of the case remaining.  The Court declines to exercise jurisdiction over the remaining state law claims.  Therefore, the remaining claims are dismissed for lack of jurisdiction.  Plaintiffs may pursue these claims against Mitchell in state court if they take timely steps to do so.


VI.  CONCLUSION

For the foregoing reasons:

1.    Defendant UPS's Motion for Summary Judgment is
      GRANTED.  All claims against Defendant UPS are
      DISMISSED.

2.    Defendant Robert E. Mitchell's Motion for Summary
      Judgment is GRANTED.

      a.    Count I of the Complaint, stating a claim
            against Mitchell for Title VII violations, is
            DISMISSED.

16

        b.    Counts II and III of the Complaint, stating claims for Assault and Battery and for Loss of Consortium against Mitchell, are DISMISSED for lack of subject matter jurisdiction.

3.    Judgment shall be entered by separate Order.

SO ORDERED, on <u>Tuesday, May 20, 2003</u>.

                                             / s /
                                      Marvin J. Garbis
                         United States District Judge